IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GUEST TEK INTERACTIVE ENTERTAINMENT LTD., ) ) )  Plaintiff, ) ) v. ) ) NOMADIX, INC., ) ) Defendant. ) | C.A. No. 18-1394 (RGA) |

**JOINT LETTER TO THE HONORABLE RICHARD G. ANDREWS
REGARDING PROPOSED ORDER FROM SEPTEMBER 3, 2020
<u>DISCOVERY CONFERENCE</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jying@mnat.com

*Attorneys for Plaintiff
Guest Tek Interactive Entertainment Ltd.*

MORRIS JAMES LLP
Kenneth L. Dorsney (#3726)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
kdorsney@morrisjames.com

*Attorneys for Defendant Nomadix, Inc.*

October 9, 2020

Dear Judge Andrews:

The parties respectfully submit this letter attaching a proposed order with respect to the discovery issues considered and decided by the Court during the September 3, 2020 discovery conference (D.I. 118). The parties have met and conferred regarding the proposed order and have reached agreement on most, but not all, of the issues addressed therein. Where there remains disagreement (Paragraphs 1, 6, and 10), the parties have provided their respective proposed language in the attached. Each of these disagreements are addressed in turn:

I.   **Paragraph 1 – Final Infringement Contentions**

   **Guest Tek's Position**

Guest Tek proposes that the language in paragraph 1 regarding the October 16, 2020 deadline for service of final infringement contentions should mirror that in paragraph 2 regarding Nomadix's October 30, 2020 deadline for service of final invalidity contentions. Thus, consistent with the Court's instructions from the September 3, 2020 discovery conference (*see* Tr. at 34:11-37:4), Guest Tek's proposed language for both paragraphs reads: "These contentions shall be final, but may be amended or supplemented upon a showing of good cause with leave of Court."

Guest Tek believes its proposed language is consistent with this Court's instructions and practice, and that the parties' respective final contentions should be subject to the same "good cause" standard. Nomadix attempts to support its position by continuing to argue without specifics and without support that Guest Tek's contentions are "rife with internal consistencies, ambiguities, vagueness, and conclusory assertions." Nomadix identified exactly three alleged deficiencies in its letter briefing in advance of the discovery conference; none of which, as addressed in detail by Guest Tek at the time, have merit. Nomadix offers no justification for holding Guest Tek to a more stringent standard than the Court's normal practice.

   **Nomadix's Position**

Paragraph 1 addresses Nomadix's request for a date by which Guest Tek must serve final infringement contentions. Nomadix made this request because Nomadix was specifically concerned that, after two years and several complaints by Nomadix, Guest Tek's infringement contentions were still rife with internal inconsistencies, ambiguities, vagueness, and conclusory assertions. (D.I. 110 at 1-2.) The Court granted Nomadix's request and specifically adopted Nomadix's proposed order on this issue, modifying only the date: "I'm going to basically change the date from September 10th to October 16th and *sign off on that one*" (D.I. 118 at 34:23-25 (referring to Nomadix's proposed order) (emphasis added)).

Paragraph 1 of the attached proposed order should therefore be Nomadix's original proposed order discussed at the hearing (D.I. 110), with the date changed from September 10 to October 16:

> Plaintiff Guest Tek Interactive Entertainment Ltd. shall have until ~~September 10~~ October 16, 2020, to serve final infringement contentions, including in response to Nomadix's Interrogatory No. 1. Absent permission from the Court after a showing by Guest Tek of diligence and no prejudice to Nomadix, Guest Tek shall not

> supplement or change its theories after that deadline. In particular, Guest Tek may not rectify any deficiencies in its final contentions due to internal inconsistencies, ambiguities, vagueness, or conclusory assertions.

(*Cf.* D.I. 110.)

Guest Tek's refusal to agree to this language reinforces Nomadix's concern that, with all the deficiencies in Guest Tek's present contentions, Nomadix will not learn Guest Tek's true theories until expert reports, depriving Nomadix of the ability to fully test Guest Tek's theories through fact discovery and to respond with appropriate invalidity contentions. It is important to be clear that Guest Tek will be unable to rectify internal inconsistencies, ambiguities, vagueness, or conclusory assertions after its final contentions are due. And it is also important to spell out that Guest Tek must show diligence and no prejudice to Nomadix to supplement or change its theories after the deadline.

While Nomadix's proposal captures exactly what the Court ordered, Guest Tek's does not. Guest Tek proposes that paragraph 1 should mirror the language Guest Tek drafted for final invalidity contentions, which appears in paragraph 2. That is backwards; if Guest Tek wanted symmetry between paragraphs 1 and 2, then the logical approach would have been to model paragraph 2 after the language for infringement contentions that the Court adopted during the hearing. Nomadix is thus justifiably concerned that Guest Tek is not so much interested in having parallel language between the two paragraphs as it is interested in having looser language regarding the finality of its infringement contentions. Guest Tek drafted the language for paragraph 2 and Nomadix agreed to it, which is why it is not in dispute. That said, Nomadix does not object to making the language in paragraph 2 mirror the language Nomadix proposes for paragraph 1. But it is worth noting that a final date for invalidity contentions was not part of the letter briefs and was not part of Guest Tek's original proposed order; it was raised for the first time at the September 3 hearing after the Court had set an October 16 deadline for final infringement contentions and otherwise adopted Nomadix's proposed order on that issue. Therefore, to the extent paragraphs 1 and 2 need to employ parallel language, the Court should once again adopt the language Nomadix proposes for paragraph 1, and paragraph 2 can then be updated to mirror paragraph 1—not the other way around.

## II.     Paragraph 6 – Nomadix's Interrogatory No. 5

### Guest Tek's Position

During the discovery conference, the Court denied Nomadix's motion to compel with respect to Interrogatory No. 5.  D.I. 118 at 38:16-39:2.  Guest Tek suggests that the proposed order reflect that denial and provide: "Nomadix's motion to compel Guest Tek to supplement its response to Nomadix's Interrogatory No. 5 is denied without prejudice."  Guest Tek's suggested language is fully consistent with the Court's brief discussion of Interrogatory No. 5, which the Court noted was completely and improperly open-ended: "I'm not going to make [Guest Tek] respond to an interrogatory saying identify every third-party product in the world that practices the patents." *Id.* at 38:24-39:2.

Nomadix attempts to reverse the Court's ruling by requesting through its proposed order

Case 1:18-cv-01394-RGA   Document 142   Filed 10/09/20   Page 4 of 9 PageID #: 5634

3

that the Court impose a deadline by which Guest Tek must respond to Interrogatory No. 5 and provide infringement claim charts for each third-party product that Nomadix has later included in a list of such products. No such procedure was discussed with the Court during the September 3 conference. Although Nomadix attempted at the discovery conference to re-cast its Interrogatory No. 5 as a request that Guest Tek provide claim charts for non-infringing alternatives, the Court correctly held that Interrogatory No. 5 by its own terms is not limited to non-infringing alternatives—indeed, it does not even use the phrase—and that Nomadix had failed to properly identify any such non-infringing alternatives. *Id.* at 38:16-24.

Nomadix implicitly acknowledges the deficiencies of its open-ended Interrogatory No. 5 by incorporating in its proposed order a reference to "Alternative Instrumentalities" as defined in a third set of interrogatories that was not at issue at the September 3 discovery conference and had only been served the week prior.[1] Nomadix's effort to salvage its Interrogatory No. 5 and circumvent the Court's September 3 ruling should be rejected.

Moreover, even if Interrogatory No. 5 had included a bare list of purported "alternative" devices (or is now reinterpreted to include such a list) and a demand that Guest Tek prepare detailed claim charts proving that the devices were in fact infringing, such an interrogatory would be improper. Because Guest Tek's damages theory rests on a reasonable royalty, rather than lost profits, Nomadix bears the burden of "proving the existence of non-infringing alternatives." *SPEX Techs. v. Apricorn, Inc.*, 2020 WL 1289546 at *2 (C.D. Cal. Jan. 21, 2020). Further, Nomadix, as the alleged infringer, "has the burden of showing that non-infringing alternatives were ***both available to it and were acceptable to its customers*** during the damages period." *Smart Skins LLC v. Microsoft Corp.*, 2016 WL 4148091 at *2 (W.D. Wash. July 1, 2016) (emphasis added).

Nomadix's newly produced list of "alternative" products fails to identify those alternatives as non-infringing. Nomadix does not assert that the products are non-infringing; nor has it made any showing that might support such an assertion. Nomadix also has failed to make any allegation or showing that the alternatives were both available to Nomadix and acceptable to its customers. Thus, Nomadix has failed to meet "step 1" of the "two-step solution" it describes below.

Nomadix's position that it need simply provide a list of "alternative" products—with no allegation or showing that the products are non-infringing and no showing that they were both available to Nomadix and acceptable to its customers—and then require Guest Tek to serve

---

[1] Nomadix's Third Set of Interrogatories defines "Alternative Instrumentalities" as "Dominion gateway (Blueprint RF); Cisco/Meraki gateways; accused Nomadix instrumentalities with one or more of the following features disabled: Class-Based Queuing, Weighted Fair Queuing, Share Unused Bandwidth (Distribute Unused Bandwidth), iNAT, Proxy ARP, VLAN; any instrumentality approved for use at Hilton, Marriott, IHG, and Hyatt properties." Not only is this list vague and ambiguous in its failure to identify any particular "Blueprint RF" or "Cisco/Meraki" gateway models and in its reference to "any instrumentality approved for use at Hilton, Marriott, IHG, and Hyatt properties" but, more significantly, Nomadix has made no allegation or showing that any of these "alternative instrumentalities" are in fact ***non-infringing*** alternatives ***available*** to Nomadix and ***acceptable*** to its customers, or shown how they might have an impact on a reasonable royalty analysis. *See infra* discussion of accused infringer's burden of proving the existence of non-infringing alternatives.

"contentions" proving that the alternatives are infringing and/or not available and unacceptable, would effectively shift the burden to Guest Tek with respect to non-infringing alternatives. Indeed, it is unlikely that infringement by these alternative products can be determined without access to the underlying source code and/or extensive testing of the products themselves. Guest Tek would face the prospect of either seeking the third-party discovery necessary to ascertain whether the products on Nomadix's list were infringing (as well as unavailable and unacceptable) or, if unable to do so, presumably be precluded from rebutting any later assertion by Nomadix to the contrary. Thus, rather than Nomadix seeking the discovery and analyzing the products itself, thereby meeting its burden of establishing a non-infringing alternative, Nomadix's interrogatory would serve improperly to shift that burden onto Guest Tek.

Not only is Nomadix's attempt to shift the burden of proving non-infringing alternatives improper, but requiring Guest Tek to track down, investigate, and disprove during fact discovery every alternative that Nomadix can possibly think of would not be proportional to the needs of the case and would not serve the interests of judicial economy. Consistent with its burden, Nomadix should be required to investigate any such non-infringing alternatives and, pursuant to the expert disclosure requirements of Fed. R. Civ. P. 26(a)(2)(B), properly identify and support any non-infringing alternatives that it believes should have an effect on the reasonable royalty calculation, to which Guest Tek would then respond in rebuttal. *See Smart Skins*, 2016 WL 4148091 at *2; *SPEX Techs.*, 2020 WL 1289546 at *3. And to the extent Nomadix requires third-party fact discovery to prove that the alternative products are non-infringing, Nomadix should pursue that during fact discovery.[2]

Ignoring the case law cited by Guest Tek, Nomadix asserts below that such a process would not allow it to "test Guest Tek's contentions through fact discovery." But Guest Tek's position regarding any non-infringing alternatives that Nomadix may eventually identify will necessarily involve expert opinion and hinge on the adequacy of the evidence and expert opinion that Nomadix itself marshals and provides in support of any such non-infringing alternative. This Court has wide latitude under Fed. R. Civ. P. 33(a)(2) to order that Guest Tek need not respond to such "opinion or contention" interrogatories until expert discovery.[3]

---

[2]   Nomadix further proposes that Guest Tek do all of this work by no later than October 16, 2020; an impossible task particularly in light of Guest Tek's deadline on October 16 for serving final infringement contentions.

[3]   Fed. R. Civ. P. 33(a)(2) provides: "An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." *See also Novanta Corp. v. Iradion Laser, Inc.*, 2016 WL 4987110 at *7 (D. Del. Sep. 16, 2016) ("[T]he party serving the [contention] interrogatories must show that early answers will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule 56.") (internal quotations omitted).

**Nomadix's Position**

Nomadix's proposed language in paragraph 6 correctly incorporates the concrete, practical solution the Court fashioned at the September 3 hearing. In contrast, Guest Tek omits the Court's solution and suggests the parties come back to the Court later if needed, which will only allow Guest Tek to continue delaying providing any response to Nomadix's fifth interrogatory.

Nomadix originally sought a complete response to interrogatory 5, which asks Guest Tek to explain its contentions, if any, that the asserted patent claims read on instrumentalities other than Nomadix's accused products.[4] At the September 3 hearing, the Court fashioned a two-step solution in which Guest Tek will respond to the interrogatory without needing to identify every third-party product in the world that practices the patents. (D.I. 118 at 38:16-39:2.) First, defendant Nomadix will identify non-infringing alternatives. (*Id.* at 38:19-20.) Second, for any identified alternatives that Guest Tek contends are infringing, Guest Tek will provide a claim chart explaining its contention. (*Id.* at 38:21-24.) The following comprises the full discussion at the September 3 hearing regarding Nomadix's request that Guest Tek respond to Nomadix's fifth interrogatory:

> [The Court:] Interrogatory number five which is a request that plaintiffs identify third parties that practice the patent which I take to be related to non-infringing alternatives, I think the first thing is defendant needs to identify what it thinks the non-infringing alternatives are. And then plaintiff can, you know, say or not say if they -- you know, if they think that it's actually an infringing alternative, well, then they can do a chart, a claim chart showing why it's an infringing alternative. But I'm not going to make them respond to an interrogatory saying identify every third-party product in the world that practices the patents.

(*Id.* at 38:16-39:2.)

Nomadix's proposed language reflects the Court's two-step solution as follows: "On or before October 16, 2020, Guest Tek shall respond to Nomadix's fifth interrogatory with respect to each Alternative Instrumentality identified in Nomadix's third set of interrogatories." For step 1, Nomadix has already identified the alternatives. Nomadix is willing to limit the scope of interrogatory 5 to the Alternative Instrumentalities identified in Nomadix's third set of interrogatories served August 21, 2020. (*See* list of Alternative Instrumentalities in n.5, *infra*.) For step 2, Nomadix's proposed language orders Guest Tek to respond to Nomadix's fifth interrogatory for those identified Alternative Instrumentalities. In light of the Court's two-step

---

[4] Nomadix's fifth interrogatory provides:

> For each instrumentality not identified in your response to interrogatory 1 [seeking infringement contentions] that you contend discloses, infringes, practices, or otherwise embodies one or more claims of an Asserted Patent, explain, for each such claim, how the instrumentality satisfies each limitation of the claim, clearly linking each claim limitation to the specific portion of the instrumentality that satisfies the limitation and stating whether you contend the limitations are satisfied literally or under the doctrine of equivalents.

solution, Nomadix's proposed language correctly notes that its motion to compel was "granted in part and denied in part." That is, the motion was granted with respect to the instrumentalities Nomadix identifies in step 1 and denied with respect to other instrumentalities.

Guest Tek ignores the Court's two-step solution and simply asserts the Court denied Nomadix's motion without prejudice. Rather than address the compromise the Court fashioned at the September 3 hearing, Guest Tek attempts to re-litigate Nomadix's request underlying that holding, which was that Guest Tek respond to Nomadix's fifth interrogatory in full. But Guest Tek's only timely basis for refusing to respond to Nomadix's fifth interrogatory has been resolved. The only such basis Guest Tek raised in its discovery letter leading to the hearing on September 3 or at that hearing was that Nomadix had not identified non-infringing alternatives. (D.I. 112 at 3; D.I. 118 at 38:16-39:2.) That objection is resolved by the Court's two-step solution at the hearing as reflected in Nomadix's language in the attached proposed order. That objection is also resolved by an additional interrogatory Nomadix served on the same issue; after Guest Tek refused to respond to Nomadix's fifth interrogatory, Nomadix served its twenty-first interrogatory similarly seeking Guest Tek's contentions regarding non-infringing alternatives, but this time limiting the interrogatory to specifically identified instrumentalities.[5] Guest Tek still refused to provide its contentions, even for the specifically identified instrumentalities and even though it served its response weeks after the September 3 hearing. Even though there is now a clearly identified, limited set of alternatives on which Nomadix seeks Guest Tek's contentions, Guest Tek continues to refuse to provide its contentions. Guest Tek's proposed order would enable it to continue delaying and would only ensure the parties would be back before the Court on the same issue.

Guest Tek's new arguments that Nomadix bears the burden of proof at trial and that the interrogatory is therefore not proportional are untimely and unavailing. Guest Tek failed to object to interrogatory 5 based on the burden of proof. In any event, the allocation of the burden of proof at trial does not limit the scope of discovery. A party cannot refuse to provide its contentions on an issue during fact discovery just because its opponent bears the burden of proof at trial.[6] Guest

---

[5] Nomadix's twenty-first interrogatory incorporates the following "Alternative Instrumentalities":

> Dominion gateway (Blueprint RF); Cisco/Meraki gateways; accused Nomadix instrumentalities with one or more of the following features disabled: Class-Based Queuing, Weighted Fair Queuing, Share Unused Bandwidth (Distribute Unused Bandwidth), iNAT, Proxy ARP, VLAN; any instrumentality approved for use at Hilton, Marriott, IHG, and Hyatt properties.

Nomadix's twenty first interrogatory provides:

> If you dispute that any Alternative Instrumentalities constitute available, acceptable noninfringing alternatives to or substitutes for purposes of calculating damages in this case, explain in detail the basis of your contention, including stating whether you contend that the Alternative Instrumentality infringes any Asserted Claims.

[6] Guest Tek cites two district-court decisions for the proposition that the accused infringer bears the burden of proof at trial on noninfringing alternatives when the patentee seeks only a reasonable royalty and not lost profits. *SPEX Techs.*, *supra*, is unpersuasive on this point because

Case 1:18-cv-01394-RGA   Document 142   Filed 10/09/20   Page 8 of 9 PageID #: 5638

7

Tek complains that it should not respond without a showing that the products are noninfringing, available, and acceptable. But Guest Tek has not pointed to any interrogatory seeking this information, despite that Nomadix served its fifth interrogatory ***more than a year and a half ago***, on February 5, 2019. Tacitly acknowledging that it failed to seek Nomadix's mirror-image contentions, Guest Tek suggests it should not have to provide its contentions until expert discovery. But by then it will be too late for Nomadix to test Guest Tek's contentions through fact discovery. If Guest Tek's argument were viable, parties would be able to shield themselves from providing contentions on an issue by refusing to seek corresponding contentions from their opponents. And while Guest Tek cites authority for deferring answers to *early* contention interrogatories, this case is in the final weeks of fact discovery—indeed fact discovery was set to close in September before Guest Tek's most recent request for another extension. In light of the limited set of alternatives for which Nomadix seeks contentions, Guest Tek's argument regarding undue burden also fails. Guest Tek's complaint about the October 16 deadline is likewise unavailing given that it has yet to provide any substantive response to interrogatory 5 or interrogatory 21 even though Nomadix served the former in February 2019 and the latter in August 2020.

### III.   Paragraph 10 – Dismissal of Patents

**<u>Guest Tek's Position</u>**

Following up on the Court's request that Guest Tek "clean up the record by submitting something indicating that [the five dropped] patents are now out of the case," (D.I. 118 at 7:16-18), Guest Tek has proposed to Nomadix that the parties pursue a stipulated dismissal under Fed. R. Civ. P. 41(a) and on September 29, 2020, shared a draft stipulation that would dismiss with prejudice all claims and counterclaims in this action with respect to the specific accused products at issue in this case.  Nomadix has yet to respond to this draft stipulation.  In light of that ongoing negotiation, and to the extent the Court is inclined to address this issue now, Guest Tek proposes that paragraph 10 of the current proposed order state as follows: "Consistent with its Paragraph 4(a) disclosures, Guest Tek shall, pursuant to FRCP 41(a), seek dismissal of its claims against Nomadix based on U.S. Patent Nos. 8,811,184; 9,531,640; 9,025,599; 9,503,419; and 9,705,846."

**<u>Nomadix's Position</u>**

Nomadix's proposed language in paragraph 10 correctly states that Guest Tek's dismissal of its asserted patent claims at this late stage should be with prejudice. After forcing Nomadix to defend against the formerly asserted patents in this litigation, Guest Tek should not be able to start all over again with a new lawsuit asserting those same patents against Nomadix. This would

---

the burden of proof was not substantively at issue; the court ruled only on a motion *in limine*. The court simply cited *Smart Skins*, *supra*, which in turn is unpersuasive because it mischaracterized another district-court decision, *LaserDynamics, Inc. v. Quanta Computer, Inc.*, No. 2:06-cv-348, 2011 WL 197869 (E.D. Tex. Jan. 20, 2011). *LaserDynamics* concluded only that, *when the noninfringing alternative was not on the market at the time of the alleged infringement*, the burden shifts to the accused infringer to show the alternative was in fact available. Nomadix is unaware of any Federal Circuit opinion endorsing either the more limited *LaserDynamics* conclusion or the broader position Guest Tek urges.

substantially prejudice Nomadix, including by forcing Nomadix to again incur expenses already incurred in this action. These expenses are substantial because Guest Tek asserted more than 140 claims spanning 8 patents and did not drop three of the formerly asserted patents until less than a month before fact discovery was set to close.

Guest Tek has proposed dismissing its claims on the five patents with prejudice, but only for the products it has accused. There is no basis for limiting the dismissal in this manner. Claim preclusion normally operates to bar claims the plaintiff could have brought in a first litigation. Guest Tek should not be able to file a new lawsuit tomorrow on any of the five dropped patents with respect to related products it could have accused in this case but chose not to. The preclusive effect of Guest Tek's dismissal should not be limited artificially. If Guest Tek believes it has preserved some other infringement claim and wishes to pursue that claim in a future suit, the parties can argue over the scope of claim preclusion if and when Guest Tek brings that future suit. There is no basis to limit the scope of claim preclusion or similar doctrines like the doctrine of *Kessler v. Eldred*, 206 U.S. 285 (1907), and it would be premature for the Court to decide the scope of preclusion when Guest Tek has not yet filed a second suit. In short, the dismissal of Guest Tek's claims should be an unqualified dismissal with prejudice.

While Nomadix contends the dismissal should be with prejudice, any dismissal without prejudice should be conditioned on Guest Tek's payment of Nomadix's fees and costs associated with the five formerly asserted patents. Those patents constitute five of the eight patents at issue in this case. Two were dropped on April 7, 2020 and the other three were dropped on August 24, 2020. The fees and costs attributable to the formerly asserted patents therefore amount to five-eighths of Nomadix's fees and costs from the beginning of the litigation through April 7, 2020, and one-half (three of the six remaining patents) of Nomadix's fees and costs from thereafter through August 24, 2020. *See Ferring Pharm. Inc. v. Novel Labs., Inc.*, No. 1:17-CV-00894-RGA, 2018 WL 5085516 (D. Del. Oct. 18, 2018) (Andrews, J.) (requiring plaintiff to pay $225,000 in defendants' fees and costs associated with plaintiff's lone remaining patent-infringement count as a condition for dismissal of that count to be without prejudice)); *see RainDance Technologies, Inc. et al. v. 10X Genomics, Inc.*, No. 1:15-cv-00152 (D. Del. Jul. 9, 2019) (Andrews, J.) (withdrawing with prejudice plaintiff's previously asserted patent claims where plaintiff did not consent to equitable considerations on a dismissal without prejudice).

Respectfully submitted,

| | |
|---|---|
| */s/ Jennifer Ying* | */s/ Kenneth L. Dorsney* |
| Jennifer Ying (#5550) | Kenneth L. Dorsney (#3726) |

Enclosure