# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GUEST TEK INTERACTIVE ENTERTAINMENT LTD., <br><br> Plaintiff, <br><br> v. <br><br> NOMADIX, INC., <br><br> Defendant. | Civil Action No. 18-1394-RGA <br><br> **FILED UNDER SEAL** |

**LETTER TO THE HONORABLE RICHARD G. ANDREWS REGARDING DEFENDANT'S RESPONSIVE DISCOVERY DISPUTE LETTER**

                                                  Kenneth L. Dorsney (#3726)
                                                  kdorsney@morrisjames.com
                                                  Morris James LLP
                                                  500 Delaware Avenue, Suite 1500
                                                  Wilmington, DE 19801
                                                  Telephone: (302) 888-6800

**ATTORNEYS FOR DEFENDANT NOMADIX, INC.**

Dated: October 28, 2020

<u>**VIA CM/ECF**</u>                                                                                October 28, 2020
The Honorable Richard G. Andrews
United States District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801

Re:     <u>*Guest Tek Interactive Entertainment Ltd. v. Nomadix, Inc.*</u>, No. 18-1394-RGA

Dear Judge Andrews:

**GUEST TEK'S REQUESTS FOR 2012-2015 INFORMATION ARE UNTIMELY**

Guest Tek's motion to compel documents from the years 2012-2015 rests on false assertions that those documents are covered by Guest Tek's RFPs and were "within the scope of Guest Tek's Aug. 25 motion to compel" (D.I. 154 at 1). Guest Tek asserts that the RFPs covering its requests are RFPs 40, 42, and 91. (D.I. 154 at 1.) Those RFPs are limited to documents related to the accused products. (D.I. 109, Exs. A-B.) And the accused products are limited to gateways and software since 2016. During the September 3 hearing on Guest Tek's Aug. 25 motion to compel, the Court asked the parties when Nomadix started "selling the products that are accused." (D.I. 118 at 4:21-22.) Nomadix stated that "the limiting factor would be the [software] version," the earliest version of which "was released in October 2016." (*Id.* at 5:3-6.) Nomadix then clarified the point Guest Tek now raises in its letter (D.I. 154 at 1 n.1), which is that the gateways running the accused software "have been on sale before that, you know, just not that [accused] version of software." (*Id.* at 5:13-17.) After that clarification, Guest Tek confirmed, contrary to the position it now takes, that 2016 is the relevant start date for the accused gateways, not just the accused software; Guest Tek stated, "the earliest version of the software that Guest Tek is accusing was released in October 2016. . . . So ***it's the boxes [i.e., the gateways] and the software since that date that are accused of infringement***." (*Id.* at 5: 18-23.)

Guest Tek did not request the 2012-2015 documents it now seeks until an e-mail dated October 22, 2020. (D.I. 155, Ex. 5.) That informal request is untimely and violates the Court's order prohibiting additional requests for production. (D.I. 144 ¶ 3; D.I. 118 at 37:8-17, 38:1–5.)

Guest Tek's attempt to establish relevance is conclusory. Guest Tek does not explain how sales of pre-2016 hardware running unaccused software (D.I. 154 at 1) are relevant to damages. Nor does Guest Tek explain how "Nomadix's financial situation" in 2012-2015 would be relevant to a hypothetical negotiation at the time of first alleged infringement in October 2016. (*Id.*) If Guest Tek believed the subject 2012-2015 documents were relevant, then it should have included them in its RFPs and should have pursued them months ago during one of the parties' numerous phone calls. Absent any showing of relevance, Guest Tek's untimely request for 2012-2015 documents is not proportional to the needs of the case.

Moreover, Guest Tek has failed to specifically address any of the categories for which it requests documents for the years 2012-2015. Nomadix addresses each of those categories in turn.

**<u>a. Sales reports for the years 2012 through 2015</u>**. This request is moot because Nomadix produced 2012-2015 sales reports, and did so on October 27, just three business days after Guest Tek demanded them for the first time on October 22 (D.I. 155, Ex. 5). Nomadix produced the 2012-2015 sales reports to avoid a dispute; as explained above, neither Guest Tek's requests for production nor its earlier motion to compel sought information for those dates.

**b. Complete profit and loss statements for the years 2012 through 2015**. Guest Tek's RFP seeking profit and loss statements is explicitly limited to 2016 and thereafter. That RFP recites:

> [RFP 32:] Any *profit and loss statements from 2016 to the present* for Nomadix, including but not limited to any monthly, quarterly, or yearly summaries.

(D.I. 109, Ex. A at RFP 32.)

**c. Price lists for each of Nomadix's customers for the years 2012 through 2015**. Guest Tek's RFP seeking price lists is explicitly limited to those for the accused products. (D.I. 109, Ex. B at RFP 91.) Since Nomadix's accused software was not released until 2016, price lists before that year do not incorporate pricing for the accused products.

**NOMADIX HAS PRODUCED THE GATEWAY CONFIGURATION DOCUMENTS IT HAS LOCATED**

Nomadix's gateways have numerous features that can be turned on or off. (Cook Decl. ¶¶ 2–4.) Under Guest Tek's theories, there is no infringement unless certain accused features are turned on and then further configured in a specific way. The only configuration information Guest Tek has sought and that might be relevant to this case is whether an end user has turned on the specific combination of features that must be turned on under Guest Tek's theories. Guest Tek's request for additional configuration information rests on the false assumption that Nomadix has the ability to extract this information from gateways that have been sold and are now owned by third parties and thus not in Nomadix's possession (D.I. 154 at 2). Once Nomadix sells a gateway, Nomadix generally does not have access to end-user configurations. (Cook Decl. ¶ 5.) Setting aside legal complications such as federal and state law regulating unauthorized access of others' computing devices, from a purely technical standpoint, extracting what features are turned on or off on a Nomadix gateway requires knowing at least an administrator username and password, which end users generally do not provide to Nomadix. (*Id.*)

In limited circumstances, Nomadix's support department may receive some information about a particular gateway's configuration at a particular moment in time for purposes of troubleshooting. (*Id.* ¶ 6.) Outside of situations in which Nomadix's support team receives an e-mail with the type of configuration summary Guest Tek refers to (e.g., Andrews Decl. Ex. 8), it would be unusual for Nomadix to have any record of relevant configuration information. (*See* Cook Decl. ¶ 6.) Nomadix performed a reasonable search for support e-mails with such configuration information and produced what it located. (*E.g.*, D.I. 155, Exs. 8, 9.)

Guest Tek's argument about Nomadix's EULA is a red herring. The EULA is broadly worded to encompass all Nomadix products, not just those accused in this case. Any "device configuration," "operating status," or "utilization rate" data that "Nomadix Products" transmit that is not cumulative of what Nomadix has produced is not what Guest Tek seeks and is in any event irrelevant to this case. In particular, the EULA provisions do not mean that Nomadix gateways transmit information about what features are turned on or off to a Nomadix server. Nor does the EULA authorize Nomadix to access a gateway and take that information. From both a legal and technical standpoint, Guest Tek's assertion that section 6(a) of the EULA gives Nomadix the power to obtain more configuration summaries is simply false.

Guest Tek's request for additional installed product records is moot. Nomadix confirmed at deposition that its installed product records are in its Salesforce system (D.I. 154, Ex. 1 at 8:6-10). Accordingly, Nomadix produced a report of those Salesforce records for all the accused

products. Guest Tek has now asked that Nomadix, in addition to providing the installed product information that exists in Salesforce, perform additional searching for any additional installed product records that Nomadix may have saved. Contrary to Guest Tek's assertion (D.I. 154 at 3), Nomadix has never refused to perform that additional requested searching. And before Guest Tek filed its letter to the Court on October 26, Guest Tek had never identified any subject information sought in its RFPs that is relevant and noncumulative of information Guest Tek already received, nor had Guest Tek provided any basis that the additional searching it requests is proportional to the needs of the case. (*Id.* Ex. 14 at 1-2.) Nevertheless, Nomadix is searching for and will produce any additional discoverable installed product records it finds.

**GUEST TEK'S UNTIMELY THIRD PARTY SUBPOENAS ARE NOT EXCUSED**

The Court should reject Guest Tek's belated request for leave to serve untimely requests for production on a subset of Nomadix's resellers (D.I. 154 at 3 & proposed order ¶ 4). Guest Tek's post-hoc rationalization that its untimely requests are "follow-up" discovery do not withstand scrutiny. Guest Tek alleges, without explanation, that its untimely document requests were prompted by production of configuration data and related end-user license agreements and correspondence. (D.I. 154 at 3.) But it fails to identify any such configuration data, agreement, or correspondence related to the subpoena targets. Nor does Guest Tek's untethered reference to configuration data explain Guest Tek's numerous document requests seeking information related to the following issues: this case and the accused products, asserted patents, and parties (RFP 1); contracts with Nomadix (RFP 2); hotel standards for high speed internet access (RFP 17); testing (RFP 3); purchase orders (RFP 4, 8); sales, licensing, and ownership (RFP 5); training (RFP 6); customers (RFP 7); R&D and marketing (RFP 9); operating status (RFP 10); operation (RFP 12); use of, demand for, and communications regarding certain features (RFP 13-15); feedback (RFP 18); and modification (RFP 19). (*E.g.*, D.I. 143-1, Ex. A.)

**SANCTIONS ARE NOT WARRANTED**

Guest Tek has provided no basis to burden the Court with an application for sanctions. Its motion for leave offers only false, vague, conclusory, and unsupported allegations.

Guest Tek falsely claims that there exist "product-specific reports and other information that Nomadix had represented at the September 3 conference that it did not have." (D.I. 154 at 3.) Guest Tek does not identify any such report or information. At the hearing, Nomadix stated it does not track profits on a per-product basis: "What they [Guest Tek] have asked for and what they're seeking is documents that specify our profits on a per-product basis. So you know, we do not have that. That would require a substantial analysis." (D.I. 118 at 16:12-15.) This representation was borne out at Guest Tek's 30(b)(6) deposition regarding documents, wherein Nomadix confirmed that it does not separately track revenue of its gateways, and that Nomadix's accounting system instead "group[s] all of our hardware together, so that includes the accessory items mentioned and our license revenue includes the support piece that you previously asked about, as well as – [cut off by Guest Tek's counsel.]" (D.I. 155, Ex. 1 at 21:21-22:7.)

Further, Guest Tek only vaguely alleges that Nomadix had "information" that was not produced, and that Guest Tek made "repeated requests." Guest Tek fails to identify any document containing such information, much less tie it to a Guest Tek RFP, identify repeated requests, and establish that Nomadix's eventual production of the document warrants sanctions.

                                          Respectfully submitted,

                                          */s/ Kenneth L. Dorsney*

                                          Kenneth L. Dorsney (#3726)

cc: All counsel of record (via CM/ECF and electronic mail)