# EXHIBITS
# A-H

# REDACTED IN THEIR ENTIRETY

# EXHIBIT I

Page 1

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- - -

AXIOHM IPB, INC.,           :     CIVIL ACTION
     Plaintiff,              :
        v.                  :
EPSON AMERICA, INC. and     :
SEIKO EPSON CORPORATION,    :
     Defendants.            :     NO. 00-420-SLR
------------------------------
SEIKO EPSON CORPORATION, and   :
EPSON AMERICA, INC.,       :
     Counterclaimants,       :
        v.                  :
AXIOHM IPB, INC., and AXIOHM   :
TRANSACTION SOLUTIONS, INC.,   :
     Counterclaim Defendants.   :

- - -

Wilmington, Delaware
Thursday, March 28 2001 at 2:00 p.m.
JUDGE'S DECISION

- - -

BEFORE:     HONORABLE SUE L. ROBINSON, Chief Judge

- - -

APPEARANCES:

     MORRIS NICHOLS ARSHT & TUNNELL
     BY: JULIA HEANEY, ESQ.

         and

     Brian P. Gaffigan
     Official Court Reporter

Page 2

APPEARANCES: (Continued)

     McDERMOTT WILL & EMERY
     BY: DONNA M. EMERY, ESQ. and
         MICHAEL D. SWITZER, ESQ.
         (Washington, District of Columbia)

        Counsel for Axiohm IPB, Inc. and
        Axiohm Transaction Solutions, Inc.

     CONNOLLY BOVE LODGE & HUTZ
     BY: ARTHUR G. CONNOLLY, III, ESQ.

        and

     HOGAN & HARTSON L.L.P.
     BY: STUART LUBITZ, ESQ. and
         JAI RHO, ESQ.
         (Los Angeles, California)

        Counsel for Seiko Epson Corporation
        and Epson America, Inc.

- oOo -

P R O C E E D I N G S

(Judge's opinion excerpted from proceedings.)

THE COURT: Okay. I'm ready to make my decision.

First of all, let me start out by saying that as far as I'm concerned, what should have happened in this case is you should have had documents production, should have used your 30(b)(6) depositions at the beginning of discovery to make sure that you have documents and that you have individual witnesses identified. It's hard for me to believe

Page 3

that we're at the very end of discovery and you are still calling out 30(b)(6) depositions. I mean it's rare and I think they're certainly less helpful than an individual deposition and I certainly would hate to think that is what you are counting on.

Given that background, number one, it seems to me that at this point if Axiohm really wants to find out about the conception and reduction to practice, it's time you asked the inventors. Forget the 30(b)(6). So I'm denying that request for relief.

Number two, about this third party. It was my understanding from what Mr. Switzer said that they have produced all documents. If there is an outstanding request and the defendant has not, then the defendant needs to, but with respect to the deposition testimony, forget the 30(b)(6). We've got two individuals who are identified on the documents that have been produced. I'm going to order that those depositions be scheduled and be taken.

Number three, and number four, the communications between Foreign Patent Offices and our own Patent Office, I'm only going to require that the prosecution files and publicly available records be produced. I am under the impression that what Mr. Switzer wants is documents that are generally not produced, at least not until patents issue, and I'm not going to go behind the regular rule and allow basically those

Page 4

kinds of documents to be produced prior to the time they would be publicly available anyway.

With respect to the licenses, again it seems to me that if the license agreements themselves do not cover either the patents or the products, then they are not covered by a request for such license agreements. Now, if in fact there are other business arrangements where people are practicing the invention and there is nothing specifically in place, I think that has to be covered by a different kind of request. So long as the specific question or request for production has been appropriately responded to, and it sounds as though it has, then I'm not going to order anything further.

With respect to defendants' complaints, we don't do contention depositions in this district, and the word "entitled" is not generally one that I embrace, so that is denied.

Number two, I think it makes sense for you all, in order to get this done congenially and orderly, to extend the discovery deadline until the end of April just for the purpose of getting your depositions in. Within one week of today, you need to have agreed among yourselves how you're going to do that. And if you are having problems, then I will entertain a further conference with you all, but it seems to me as though at this point in time, with the end of

Page 5

1  discovery looming, it's time for you all to get in gear and
2  get this done.
3       With respect to these folks who are not in this
4  country, I just want you to know that it is my belief, and
5  I'm not sure what I heard, if these individuals are employed,
6  whether they're directors or officers or anything else,
7  they'd better make themselves available not necessarily in
8  this country but someplace. If they're not in any way
9  related, then that is a problem for the person who wants to
10 take their deposition.
11      With respect to the software, I don't know,
12 apparently the software has been produced. Axiohm intends
13 to supplement all of these things by the end of this month,
14 which after all is Friday. With respect to the prior art, I
15 want to make sure Axiohm understands, I don't care whether
16 it's literally reproduced, but if it's not identified by
17 April 18, it will not be used or usable in summary judgment
18 or at trial. So you had better make sure whatever prior art
19 you intend to rely on through the case that you identify it
20 before the end of discovery.
21      Likewise, willful infringement. If in fact,
22 Axiohm, you intend to rely on the opinions of counsel,
23 generally this is not an issue that we address at the end
24 of discovery, you have to let Epson know by March 30.
25 Otherwise, you will be precluded from using that, and that

Page 6

1  will give an opportunity for discovery before the end of
2  discovery comes about. So March 30, which is after all,
3  what is it, Friday, is your deadline. This is something that
4  should have been addressed prior to this.
5       With respect to the damages, the complaint about
6  damages, what can I say when a party says we've produced
7  related materials? All I can say is if there are outstanding
8  contentions, they have to be replied to.
9       I think that addresses everything. If you all
10 are having problems with the depositions, you let me know.
11 We'll schedule something next week.
12      Is there anything further we can address?
13      MS. TANGUAY: No. Thank you, your Honor.
14      THE COURT: All right. Thank you. Good-bye.
15      MR. RHO: Can we ask the court reporter for an
16 expedited transcript of this judge's decision?
17      THE COURT: Well, if you identify yourself, I
18 will order it.
19      MR. RHO: Yes. Jai Rho. And I would like that
20 sent.
21      THE COURT: All right. Thank you.
22      (Telephone conference ended at 3:05 p.m.)
23
24
25

Case 1:18-cv-01394-RGA   Document 215-1   Filed 12/23/20   Page 5 of 20 PageID #: 7264

# EXHIBIT J

# EXHIBIT J

```
                                          1
 1         IN THE UNITED STATES DISTRICT COURT
 2              FOR THE DISTRICT OF DELAWARE
 3  CHALUMEAU POWER SYSTEMS  :
    LLC,                     : No. 1:11-cv-01175-RGA
 4       Plaintiff,          :
    v.                       :
 5                           :
    ALCATEL-LUCENT USA, INC., :
 6  et al.,                  :
         Defendants.         :
 7
 8              Friday, October 4, 2013
                3:00 p.m.
 9
                Pretrial
10              Courtroom of Judge Richard G. Andrews
11              844 King Street
                Wilmington, Delaware
12
13  BEFORE:  THE HONORABLE Richard G. Andrews,
             United States District Court Judge
14
15  APPEARANCES:
16          FARNAN LLP
            BY:  MICHAEL FARNAN, ESQ.
17
                     -and-
18
            LEE, JORGENSEN, PYLE & KEWALRAMANI, PC
19          BY:  MICHAEL LEE, ESQ.
20              On behalf of Plaintiff
21
22
23
24
```

```
                                          2
 1  APPEARANCES CONTINUED:
 2          MORRIS, NICHOLS, ARSHT & TUNNEL LLP
            BY:  JACK BLUMENFELD, ESQ.
 3
                     -and-
 4
            GOODWIN PROCTER LLP
 5          BY:  LANA SHIFERMAN, ESQ.
 6              On behalf of Defendants
```

```
                                          3
 1           THE COURT:  Mr. Farnan, you have
 2  Mr. Lee with you.  Were you at the claim
 3  construction?
 4           MR. LEE:  I was not.
 5           THE COURT:  So Mr. Jorgensen was
 6  there.
 7           MR. LEE:  That's correct.
 8           THE COURT:  Mr. Blumenfeld, you
 9  have Ms. Shiferman?  Is that the pronounciation?
10           MS. SHIFERMAN:  Yes, Your Honor.
11           THE COURT:  And you were at the
12  claim construction I remember.
13           MS. SHIFERMAN:  I was.
14           THE COURT:  I got thrown off a bit
15  because of the way this was scheduled, and then
16  there was a certain amount of repetition in the
17  pleadings that were filed but I didn't actually
18  realize that right away so I was busy cursing
19  that there were extra pleadings, but I got over
20  that.
21           So I have read everything.  There
22  was one thing I was kind of interested in
23  hearing from you all on.  The others seem to be
24  pretty cut and dry.  But on this interrogatory,
```

```
                                          4
 1  whatever it is, the revenue information on these
 2  Omni switches in the 7000 and 9000 family,
 3  Mr. Lee, you're the one who is requesting the
 4  information.  What is your theory as to why you
 5  should get the sales information for these Omni
 6  switches?
 7           MR. LEE:  That's how they're sold,
 8  Your Honor.  They're sold as a family.
 9           THE COURT:  What does that mean?
10  Because I understood from what Alcatel wrote
11  that they're kind of like my family, some in
12  Delaware but some are out of state.  So, yes,
13  we're a family but we don't necessarily travel
14  together.  Or in this particular case, these
15  switches are sold independently of what gives
16  them Power over Ethernet technology.
17           MR. LEE:  The switches are
18  marketed as either having or not having PoE
19  technology.  So I downloaded this from the
20  website.  It says, with or without Power over
21  Ethernet.  The whole family is offered with or
22  without Power over Ethernet.
23           THE COURT:  So the impression I
24  got from Alcatel was that you could buy the
```

25

1  identified. But let's assume they are called
2  Power over Ethernet Card No. 1. I take it by
3  what you've said about the detail that you've
4  gotten so far, you can look and see whether they
5  are normally sold for $300 each, but there's
6  some percentage of them which were sold for $50
7  each. In other words, the underlying theory you
8  have here is that the information you're
9  getting, not casting any aspersions on Alcatel,
10 is not accurate. And it seems to me that before
11 we start exploring whether that's the case, it
12 would be nice to know whether, in fact, there's
13 some objective indication that that information
14 you've gotten is not accurate. Do either of you
15 understand?
16         MS. SHIFERMAN: The information
17 has been pulled from the system so --
18         THE COURT: No. No. I'm not
19 casting --
20         MS. SHIFERMAN: Right. And it can
21 be compared to the actual price list which we've
22 also produced. So to the extent that there's a
23 question on what it is advertised or listed for
24 as compared to what the card is sold for if

26

1  there is a discount or other change, they have
2  the information in hand to make that comparison.
3         THE COURT: So you at least
4  understood what I was suggesting. Do you
5  understand, Mr. Lee?
6         MR. LEE: Yes, I understood.
7         THE COURT: So a couple of things,
8  I came in here thinking there's no way I was
9  giving you this chassis information, but I've
10 learned something from the discussion. But I
11 think right now it's actually premature. I
12 think you're chasing a theory which there could
13 be factual support for but it's not there right
14 now. And I think in the next few days when you
15 depose Mr. Vasilakis, you'll be able to explore
16 the topic from him as to whether there's a
17 factual underpinning for this. Apparently,
18 you've been deposing some other people too. So
19 I'm kind of inclined to think that the sale of
20 the chassis is irrelevant. But I will be open
21 to persuasion that it is relevant.
22        On the other hand on the Alcatel
23 side of we can't produce this material, I've
24 heard Ms. Shiferman. Is there any actual

27

1  declaration or anything else from somebody at
2  Alcatel that says we can't do this?
3         MS. SHIFERMAN: We have not gotten
4  a declaration from an IT person.
5         THE COURT: Why don't you all do
6  the deposition of Mr. Vasilakis and whatever
7  else you have in the near future, and you can
8  talk to each other about whether there really is
9  something worthwhile pursuing here or not, both
10 from whether you got some addition that you're
11 getting information that's going to essentially
12 prejudice your damages calculation because of
13 bookkeeping things or whatever. You could be
14 thinking about how if I do say that sounds
15 relevant, the question of how much would it
16 actually cost you to produce it. Okay?
17         MS. SHIFERMAN: Yes.
18         THE COURT: I believe that takes
19 care of that. According to my list of things,
20 there were three other matters on the table and
21 I will tell you what I think about them, which
22 is one of them was on the 30(b)(6) depositions
23 Topics 8 to 10, which all I have is their
24 contention deposition topics, and I think

28

1  Mr. Blumenfeld cited Judge Stapleton. I say
2  Mr. Blumenfeld, maybe Ms. Shiferman. But I'm
3  sure Mr. Blumenfeld probably likes citing Judge
4  Stapleton. It's pretty hard to find anything
5  you can cite better than Judge Stapleton. So
6  I'm going to quash those three topics. And I
7  think the only thing that actually -- off the
8  record.
9         (Discussion held off the record.)
10         THE COURT: So back on the record.
11 So this issue has come up for me before and I do
12 think that contention depositions are not fair
13 to whomever's being asked to formulate these
14 things. And I don't think changing -- I forget
15 what the exact language change you made but
16 actually that's come up before me too.
17         MR. BLUMENFELD: Basis of fact --
18         THE COURT: Yes. So on Topic 7
19 which is the one about when did Alcatel first
20 know about your patent, I see that they've
21 answered it in interrogatory. It seems to me
22 unlikely to be very productive to have some
23 corporate witness, but it also seems to me it's
24 not going to take very long so I will let you do

29

1  No. 7.  And I presume there is some corporate
2  witness who can be found who will know how it
3  was that Alcatel learned about the patent.
4  Presumably, the same person that provided the
5  information of the interrogatory answer.
6          Then the other thing was what the
7  deposition of Mr. Vridge(ph) and I've heard some
8  Delaware lawyers talking about the Apex Doctrine
9  before.  My impression is that basically
10 Mr. Vridge is high enough up in whatever
11 organization exactly he's in so that absent some
12 better showing that has been made so far, I'm
13 not going to permit his deposition.  I do think
14 a few days from now, I guess on Tuesday, when
15 you depose Mr. Vasilakis, if he turns out not to
16 be a fountain of knowledge, that may put things
17 in a different perspective.  But right now based
18 on the documents that have been submitted, I
19 don't think a deposition of Mr. Vridge is
20 appropriate.
21         So does that resolve everything?
22 I see you resolved between yourselves
23 Mr. Vasilakis.  So as far as I'm concerned,
24 that's great.  Is there anything else?

30

1          MS. SHIFERMAN:  No, Your Honor.
2          MR. LEE:  I think that's it, Your
3  Honor.
4          THE COURT:  All right.  So we're
5  done.  Off the record.
6          (The proceedings ended at
7  3:40 p.m.)

31

1          C E R T I F I C A T I O N
2          I, Taneha Carroll, Professional
3  Court Reporter, certify that the foregoing is a
4  true and accurate transcript of the foregoing
5  proceeding.
6          I further certify that I am neither
7  attorney nor counsel for, nor related to nor
8  employed by any of the parties to the action in
9  which this proceeding was taken; further, that I am
10 not a relative or employee of any attorney or
11 counsel employed in this case, nor am I financially
12 interested in this action.

                _____
                Taneha Carroll
                Professional Reporter and Notary Public

# EXHIBIT K

Tuesday, October 11, 2005

**SHEET 1**

**Page 1**

```
              IN THE UNITED STATES DISTRICT COURT
              IN AND FOR THE DISTRICT OF DELAWARE
                           - - -
PHARMACIA & UPJOHN COMPANY,    : CIVIL ACTION
                               :
         Plaintiff and         :
         Counter-defendant,    :
                               :
    v.                         :
                               :
SICOR INC., and SICOR          :
PHARMACEUTICALS INC.,          :
                               :
         Defendants and        : NO. 04-833 (KAJ)
         Counter-Claimants.    :
                           - - -
                 Wilmington, Delaware
            Tuesday, October 11, 2005 at 3:00 p.m.
                 TELEPHONE CONFERENCE
                           - - -
BEFORE:  HONORABLE KENT A. JORDAN, U.S.D.C.J.
                           - - -
APPEARANCES:

         MORRIS NICHOLS ARSHT & TUNNELL
         BY: MARYELLEN NOREIKA, ESQ.

              and

         McDONNELL BOEHNEN HULBERT & BERGHOFF, LLP
         BY: DANIEL A. BOEHNEN, ESQ.,
             JOSHUA R. RICH, ESQ., and
             GRANTLAND G. DRUTCHAS, ESQ.
             (Chicago, Illinois)

                  Counsel for Pharmacia & Upjohn
                  Company

                             Brian P. Gaffigan
                             Registered Merit Reporter
```

**Page 2**

```
APPEARANCES: (Continued)

         ASHBY & GEDDES
         BY: JOHN G. DAY, ESQ.

              and

         SONNENSCHEIN NATH & ROSENTHAL, LLP
         BY: REID L. ASHINOFF, ESQ. and
             DAVID R. BAUM, ESQ.
             (New York, New York)

              and

         SONNENSCHEIN NATH & ROSENTHAL, LLP
         BY: JORDAN A. SIGALE, ESQ.
             (Chicago, Illinois)

                  Counsel for Sicor Inc. and Sicor
                  Pharmaceuticals Inc.

                    - oOo -

                 P R O C E E D I N G S

         (REPORTER'S NOTE: The following telephone
conference was held in chambers, beginning at 3:00 p.m.)
         THE COURT: Hi, this is Judge Jordan. Who do I
have on the line?
         MS. NOREIKA: Good afternoon, Your Honor. It's
Maryellen Noreika from Morris Nichols for plaintiff
Pharmacia; and I have with me, Dan Boehnen and Joshua Rich
of the McDonnell Boehnen firm in Chicago.
         MR. BOEHNEN: Also with us in Chicago is Grant
Drutchas.
```

**Page 3**

         MS. NOREIKA: Oh. I apologize, Grant.
         THE COURT: All right. Who do I have on for Sicor?
         MR. DAY: Good afternoon, Your Honor. On behalf of Sicor, you have John Day from Ashby & Geddes as local counsel; and from the Sonnenschein firm in New York, Reid Ashinoff and David Baum; and from Sonnenschein's office in Chicago, Jordan Sigale.
         THE COURT: All right.
         MR. ASHINOFF: Good afternoon, Your Honor.
         THE COURT: Good afternoon. Well, by my count, this is the fifth time we're getting together in this case because we have discovery issues. So this is not a good record, ladies and gentlemen, but we're going to plow through what we've got here.
         Before we start, however, I have a question for the folks at Sicor, and that is, I got the in camera submission that you sent over. Did you send a version, redacted, if you thought necessary, of your legal argument to the opposing counsel?
         MR. ASHINOFF: Your Honor, what we served on the opposing counsel is a motion that we filed and a privilege log that listed the privilege material that the Court got. What we served in camera on the Court was the short discussion of the substance of the privileged material

**Page 4**

and the actual privileged material. We did not serve copies of the discussion and description of the privilege material or the actual material on our adversary.
         THE COURT: All right. I need to have you identify yourself for the record.
         MR. ASHINOFF: It's Reid Ashinoff. I'm sorry, Your Honor.
         THE COURT: All right. Mr. Ashinoff, that's not going to cut it. I'm going to quote to you what I said in our last teleconference on the 19th of September. Page 24 of the transcript:
         "You can certainly submit your documents in camera and your legal arguments ought to be submitted so that the other side can respond to them."
         Later on the same page:
         "In short, you give me the documents but you give your arguments to the attorney side, too, so they can respond unless it's something genuinely extraordinary that you think will get past me; all right?"
         And what I was trying to communicate there and what I will reemphasize is I'm not going to let you give me legal argument without an opportunity for them to respond to legal argument.
         MR. ASHINOFF: Your Honor, I don't think we cite any law at all in the material we submitted in camera. What

**33**

1 representation from you folks that you have checked with the
2 folks he just named, an affirmation that in fact you have
3 inquired of and heard from these people that there are no
4 lab notebooks belonging to this inventor. And that's all
5 I'm hearing he is asking for. Are you telling me you got an
6 issue with that?
7     MR. BOEHNEN: To me, Your Honor, no, sir. And I
8 understand, just to restate it, I believe he is referring to
9 the Oblon firm, Jake Wood, which is JA Kemp & Co. in the
10 U.K, and --
11     MR. SIGALE: And the Nerviano Consulting firm
12 (phonetic) where many of these inventors found gainful
13 employment.
14     MR. BOEHNEN: -- the people in the Nerviano
15 Medical Sciences Facility as well as Pfizer itself.
16     THE COURT: Right. Okay.
17     MR. BOEHNEN: No, not a problem. We'll be happy
18 to do that.
19     THE COURT: Done.
20     MR. SIGALE: If I might, I'd prefer to have the
21 notebooks.
22     THE COURT: Well, I'm sure everybody would
23 prefer the notebooks were there because then we wouldn't be
24 having this fight at all. So obviously if the notebooks are
25 there, they'll be produced, but if they're not, you will get

**34**

1 an affirmation of what was done to look for them with these
2 other folks, right?
3     MR. BOEHNEN: Yes, sir.
4     MR. ASHINOFF: Your Honor, just to go back half
5 a step. On the foreign patent material that Mr. Boehnen,
6 Ms. Noreika say is now being collected, given that we plan
7 to try to go abroad and take the inventors on November 7th,
8 can we get some date not too late in October when that
9 material will be produced to us so we have the time to
10 assimilate it before we take the inventors?
11     THE COURT: Mr. Boehnen.
12     MR. BOEHNEN: We have already begun making every
13 effort to get that to them as soon as possible. Let's see.
14 We can start a rolling production to them by the end of next
15 week and I think we hope to have it to them by the end of
16 October.
17     THE COURT: All right. End of October it is.
18 And a rolling production is a good idea.
19     MR. ASHINOFF: Thank you.
20     THE COURT: Okay. Then we had the dispute about
21 the 30(b)(6) categories.
22     MR. ASHINOFF: And I'm going to let Mr. Sigale
23 address that, Your Honor.
24     MR. SIGALE: Your Honor, we propounded a number
25 of categories in a 30(b)(6) notice that asks for the factual

**35**

1 contentions underlying legal contentions I need to
2 understand and I thought this was an efficient way to do it.
3 For instance, if we take category number six. We asked for
4 the facts concerning Pharmacia's allegation that licensing
5 and adoption of the ready-to-use formula is evidence that
6 the patent satisfied the obviousness requirement.
7     I need to know what facts those are. That is
8 not a contention request. It is what licensing are you
9 talking about? What adoption are you talking about? What
10 are the circumstances about that licensing? And I thought
11 this was an efficient way to get that. I can go through a
12 couple other categories but I can assure you I'm not looking
13 for legal contentions, that is a waste of time. A lay
14 witness is not going to be able to give that to me, but
15 facts they certainly can.
16     THE COURT: All right. Mr. Boehnen, is this
17 yours again?
18     MS. NOREIKA: Your Honor, this is Maryellen
19 Noreika. I'll respond to this issue.
20     THE COURT: Okay.
21     MS. NOREIKA: Sicor, there doesn't seem to be
22 any disagreement that depositions are not the appropriate
23 means by which to obtain contentions. Instead, they're
24 saying, well, we're just seeking facts. But as the topic
25 that Mr. Sigale just read indicates, these are seeking

**36**

1 contentions: All facts regarding Pharmacia's allegations
2 regarding copying, commercial success, failure of others.
3 There is a topic asking for the data Pharmacia contends
4 shows secondary considerations and the conclusions a person
5 skilled in the art would draw from that data. There is a
6 topic asking for a witness to testify about Pharmacia's
7 response to a contention interrogatory on secondary
8 considerations.
9     THE COURT: Okay.
10     MS. NOREIKA: I mean the wording of these
11 topics.
12     THE COURT: I think I have your position. I
13 have other folks who need my attention at 4:00 o'clock so
14 let me tell you, having read this, what my impression is.
15     I think there is some good force to the argument
16 being made by Pharmacia that the inserting of the word
17 "facts" doesn't make this less of an effort to get at what
18 is essentially the legal position of the party, although you
19 may get the benefit as well of saying, well, these are the
20 pieces of specific evidence.
21     So in the first instance, and on an expedited
22 basis, not a 30-day turnaround, if you want the chance to
23 answer these as contention interrogatories, I'm going to
24 direct that you accept them as such and you answer them
25 forthwith. You know, the sort of thing that you get a

SHEET 10

**37**

1  couple of weeks to respond to.
2       And then if you folks on the Sicor side want to
3  do some follow-up deposition discovery, targeted at
4  inquiring about specific facts that are revealed in the
5  context of these interrogatory responses, you're free to
6  do that.
7       I take the point that Pharmacia is making here,
8  which is it's so broadly worded, it can't help but really be
9  a circumstance where somebody is asked to know every fact
10 pertaining to every contention and that's a little bit much
11 to put on a deponent.
12      So that is the resolution to that. You want to
13 treat them as contention interrogatory attorneys. Done.
14 Answer them in two weeks.
15      And then if you have some follow-up and more
16 targeted and specific 30(b)(6) effort you want to make,
17 Sicor, you follow up on it that way.
18      MR. ASHINOFF: Thank you, Your Honor.
19      THE COURT: Now, let me tell you one last thing.
20 And this is for you, Mr. Ashinoff, in the discussions that
21 you are going to be having with your client, to the extent
22 again that this is helpful.
23      And again, we're treading here carefully and
24 I'm very careful when we talk about the attorney-client
25 privilege. I want to assure you I have not made lightly

**38**

1  the decision I made about how to approach the bifurcation
2  request. To the extent it's helpful in your discussing
3  with your client my understanding of the Knorr opinion, I
4  view Knorr-Bremse as saying no adverse inference can be
5  drawn from either failing to get an opinion or declining to
6  produce it; that you are entitled to get your opinion and
7  to stay silent about it.
8       Viewing it that way, I have never yet heard
9  anybody make a reasoned argument to me why it could be
10 put before a jury after the Knorr-Bremse opinion that an
11 opinion was received but not tendered. And in the absence
12 of that, I'm inclined to think there probably isn't a
13 reasoned argument. That the only reason for putting it
14 in front of a jury would be so they draw an adverse
15 inference, which with what Knorr-Bremse says could not
16 happen.
17      So I give that to you as my best reading of
18 Knorr, in the absence of people having really been able to
19 put it forth, but I think it only fair, since people are
20 trying to grope around and make a decision, that they grope
21 a little less blindly. I hope that is helpful to you.
22      MR. ASHINOFF: It is, Your Honor. And it
23 actually comports with literally a 100-year old doctrine
24 in federal law in other appellate courts to the extent of
25 saying that to force somebody to assert the privilege in

**39**

1  front of a jury is reversible error and that comports with
2  what Your Honor is saying.
3       THE COURT: Okay. Well, I thank you for your
4  time today. I hope it has been helpful in getting some
5  things worked out. Let me tell you real quickly what I'm
6  looking for as a date in February because this is going to
7  appear in a revised scheduling order that we'll put out.
8  I'm going to see you folks for argument on February 3rd
9  instead of January 19th. That's a Friday. All right?
10      MR. BOEHNEN: Your Honor, one quick point for
11 Pharmacia.
12      THE COURT: Yes.
13      MR. BOEHNEN: Can we have a new date when our
14 briefs in opposition to bifurcation will be due? I would
15 suggest two weeks after they produced papers to us if they
16 chose to rely upon them.
17      THE COURT: Mr. Ashinoff, you're fine with that,
18 I assume.
19      MR. ASHINOFF: Yes, as long as Mr. Boehnen
20 doesn't in the interim try to put my witness in the chair
21 and force us to go through all kinds of contortions about
22 privilege.
23      THE COURT: Well, I'm sure everybody wants to be
24 efficient here, or at least I would like to think so.
25      Mr. Boehnen, you take that point, I'm sure.

**40**

1       MR. BOEHNEN: Yes, sir.
2       MR. ASHINOFF: Your Honor, one last comment on
3  what Your Honor last said, and I apologize for this.
4       This law firm has an annual weekend once a year
5  where it gathers its partners and their spouses and et
6  cetera and it happens to be February 1st through 4th of
7  2006.
8       THE COURT: Okay. That is enough said. I will
9  not trample on a firm tradition. If it's the 1st through
10 the 4th, then I'm shifting you guys to the next day I can
11 give you. And I think it's, yes, the next day I can give
12 you is the 9th and that's when I will set you down. We'll
13 do this at 10:00 a.m. on February 9th.
14      Can you do that, Mr. Boehnen?
15      MR. BOEHNEN: Yes, sir.
16      THE COURT: Okay.
17      MR. ASHINOFF: Thank you very much, Your Honor.
18      MR. SIGALE: Your Honor, I'm sorry. This is
19 Mr. Sigale. We left open the claim construction dates. You
20 were suggesting December 12th for the opening brief. The
21 opposition brief would be due?
22      THE COURT: It will follow the ordinary course:
23 Two weeks for answer, one week for reply.
24      MR. SIGALE: Right, which would be the 26th of
25 December; and inasmuch as I don't observe Christmas, I would

# EXHIBIT L

```
            IN THE UNITED STATES DISTRICT COURT

              FOR THE DISTRICT OF DELAWARE




RELIANT PHARMACEUTICALS, INC., )
                               )
         Plaintiff,            )
                               ) C.A. No. 06-774
v.                             )
                               )
PAR PHARMACEUTICAL, INC.,      )
                               )
         Defendant.            )




              Friday, March 7, 2008
              11:30 a.m.
              Courtroom 4B


              844 King Street
              Wilmington, Delaware



BEFORE:  THE HONORABLE JOSEPH J. FARNAN, JR.
         United States District Court Judge



APPEARANCES:

         MORRIS NICHOLS ARSHT & TUNNELL
         BY:  JACK BLUMENFELD, ESQ.

              -and-

         KIRKLAND & ELLIS
         BY:  CHRISTINE WILGOOS, ESQ.

                  Counsel for the Plaintiff
```

```
APPEARANCES (Cont'd:)


        YOUNG CONAWAY STARGATT & TAYLOR
        BY:  KAREN L. PASCALE, ESQ.

                -and-

        FROMMER, LAWRENCE & HAUG
        BY:  JOHN G. TAYLOR, ESQ.

                Counsel for the Defendant
```

```
 1                   THE COURT:  Next we'll take
 2     Reliant and Barr.  All right.  The dispute I
 3     have been waiting for.  Do you want to announce
 4     your appearances.
 5                   MR. BLUMENFELD:  Thank you, Your
 6     Honor.  Jack Blumenfeld again for Reliant
 7     Pharmaceutical with Christine Willgoos from
 8     Kirkland & Ellis.
 9                   THE COURT:  Good morning.
10                   MS. PASCALE:  Good morning, Your
11     Honor.  Karen Pascale from Young Conaway and I
12     would like to introduce John Taylor from
13     Frommer, Lawrence & Haug, the New York office.
14                   MR. TAYLOR:  Good morning Your
15     Honor.
16                   THE COURT:  Okay.  Actually you
17     have a pretty straightforward dispute.  I have
18     one question about the motion to compel
19     documents relating to consumption, disposal or
20     destruction of Par samples.
21                   I think what I read was that there
22     have been replacement samples provided and can
23     somebody address that.
24                   MS. WILLGOOS:  Good morning, Your
```

| | |
|---|---|
| 1 | limitations of the patent.  Certainly there must |
| 2 | be technical people at Reliant who can testify |
| 3 | about here is the evidence we have had about how |
| 4 | our drug performs, here is the evidence that we |
| 5 | have about its characteristics and describe and |
| 6 | explain to us what this document, what this |
| 7 | evidence, again, it's something they have |
| 8 | introduced in response to a contention |
| 9 | interrogatory as a fact. |
| 10 | And we need, although we can |
| 11 | certainly get an expert's opinion on why this |
| 12 | evidence is warranted, we should be able to |
| 13 | investigate what evidence do you have, what |
| 14 | other evidence might you have that can |
| 15 | contradict or support your belief that this drug |
| 16 | falls within the '580 patent.  We believe in |
| 17 | these circumstances which we have already |
| 18 | submitted contention interrogatories and facts |
| 19 | have been identified, we now should be able to |
| 20 | explore the basis for the factual statements |
| 21 | that they make. |
| 22 | THE COURT:  All right.  Thank you. |
| 23 | Okay.  With regard to the |
| 24 | plaintiff's motion, Reliant's position motion |

1    for a protective order regarding Par's notice of

2    deposition to Reliant pursuant to Rule 30(b)(6)

3    which is Docket Item 172, I find that the

4    requested deposition is in this context of

5    inquiring about the contentions that Reliant

6    asserts in the litigation. I think that that's

7    clear both from the papers and from the

8    presentation here this morning.

9              30(b)(6) depositions I think can

10   be a mechanism to a party to ascertain the

11   contentions of the opponent because I think

12   30(b)(6) depositions can be used to probe for

13   beliefs and opinions held by a party or the

14   entity that is a party.

15              I think that Reliant has correctly

16   stated in its papers that in this district there

17   is a preference that contention discovery be

18   conducted by interrogatory even when factual

19   information is sought, and then that information

20   can be further probed in the course of the other

21   available mechanisms for discovery.

22              Having found that this is

23   contention discovery that's sought, even though

24   it's in a factual nature, I'm going to deny the

```
 1     motion being persuaded that this -- our district
 2     practice of deferring to interrogatories is
 3     appropriate in the circumstances of this case.
 4     So the motion will be granted for the protective
 5     order on that notice of deposition.
 6                I should also add that with the
 7     circumstances of this case I think it's clear
 8     that the information sought is available in
 9     several other procedures available under the
10     discovery rules.
11                Okay.  I think that closes your
12     two applications out.
13                MR. BLUMENFELD:  It does, Your
14     Honor.
15                MR. TAYLOR:  I'm not raising this
16     trying to argue it, but we have had a motion for
17     disqualification of former lawyers.  I just want
18     to make sure it was on your Your Honor's radar
19     screen.
20                THE COURT:  Absolutely.  I'm sure
21     you have heard this before, I don't know if
22     everyone has heard it, I never lose a motion on
23     the screen.  I know they're there, in fact I get
24     a weekly report from the chamber staff, and I
```

```
 1      sometimes don't move to certain motions
 2      because -- not because I don't know they're
 3      there or because I don't have the energy to
 4      attend to them, there is usually something else
 5      behind my holding back.
 6                    And so I'm aware of the
 7      disqualification motion, I know I heard it back
 8      in November or something the first time or
 9      whenever it was, but I'm holding it and you'll
10      probably hear from me in the future on that
11      motion.
12                    You know, not to talk about that
13      motion, I was holding an opinion, and I wanted
14      to hold it longer, I'm just anxious to see the
15      Federal Circuit on this double patent in the
16      pharmaceutical cases.  I just know something has
17      got to be coming out of there.
18                    But sometimes it's hard to explain
19      that to the parties who are anxious to get a
20      decision.  You think there is going to be an all
21      four corners dropping of a bomb, and if you -- I
22      had in the Lipitor case on written description,
23      and then I didn't hold it because everybody
24      wanted Lipitor out and sure enough they decided
```